[L. A. No. 14863. In Bank.—January 28, 1935.]

DR. JAMES L. JOHNSON et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Ben B. Mathews and Mathews & De Wolf for Petitioners.

Everett A. Corten for Respondents.

THOMPSON, J.—This is a proceeding to review an order of the Industrial Accident Commission setting aside and vacating an award made against an insurance carrier for the payment of hospital and medical bills. The facts disclose that one Jimmie Johnston was seriously injured by a powder explosion at the Ballarat mine in Inyo County on June 30, 1930, he being employed at the time by R. S. Black to do road and assessment work. Black was insured by the Constitution Indemnity Company of Philadelphia, the liability of which concern as the primary insurer was established by this court in the case of *Black* v. *Industrial Acc. Com.*, 215 Cal. 639 [12 Pac. (2d) 640]. Subsequently, the Lloyds Insurance Company of America, having assumed the liability of the former company, was made a joint defendant, by order of the respondent commission. Both companies are now in the hands of a receiver with the Insurance Commissioner of the state as liquidator. As a re-

sult of the injury to the employee, Johnston, medical bills were incurred in the effort to restore his health, among which are the unpaid bills of these petitioners: Dr. James L. Johnson, Pathological Laboratory. Good Samaritan Hospital, and certain others, paid by the Industrial Commission of the State of Arizona, the total of which is $965.55.

On November 29, 1932, a compromise agreement between the Constitution Indemnity Company and the injured employee was filed with the Commission and was approved by it on December 12, 1932. In its material parts, it recites: "[T]hat the amount agreed upon by the said parties to be paid said applicant in full satisfaction and release of his claim arising under the Workmen's Compensation Insurance and Safety Act of California, is the sum of $3650.00, in addition to the $100.00 heretofore paid, in one lump sum, *together with acknowledgment of liability for all medical and hospitalization benefits heretofore furnished the applicant,* Jimmie Johnston, to relieve and cure him from said injury and in such amounts as are reasonable and proper under said Act and the practice of this Commission, and which are to be fixed by this Commission should the claimants furnishing said medical not be able to agree with or be paid by the undersigned insurance company, in the usual and customary manner of this Commission; and out of which said $3650.00 all liens thereon of applicant's attorney and others, if any, is to be fixed by this Commission and paid; the undersigned corporation shall be liable for no medical or hospital or other treatment of any sort rendered the applicant by anyone hereafter; . . . " (Italics ours.) Then follows a subrogation clause and a paragraph releasing the employer and his insurer.

In order for us to have clearly in mind the point to be hereafter discussed, it is well to note that the insurance carrier assumed to pay the hospital and medical bills incurred in addition to the lump sum settlement, from which latter sum there was to be deducted only liens for attorney's fees and similar items and perhaps medical bills incurred subsequently.

After the approval of the agreement already mentioned, the petitioners here filed with the respondent Commission their claims for medical aid furnished the employee, which claims were allowed and approved and, on March 7, 1933, a

supplemental award for medical expenses in the sum of $965.55, and covering the items here in question, was made. The Commission also established liens against the compensation in the sum of $497 and ordered the insurance carrier, after satisfying the liens, to pay the remainder of the compensation agreed upon to the employee. Upon grounds entirely unconnected with those upon which the order under review was made, the Constitution Indemnity Company, on March 24, 1933, sought a rehearing in so far as the supplemental award was concerned, in order that it might contest the reasonableness of the claims and by proper evidence determine whether R. S. Black, the employer, had paid items thereof amounting to $680.55. A rehearing was granted and, on February 5, 1934, it was found that the medical bills of these petitioners amounted to the sum of $965.55, which is the same as previously approved, but the respondent Commission found that the insurance companies had actually paid the employee the sum of $4,453, or more than the lump sum settlement, although having prior thereto been served with notice of the unpaid liens in the sum of $497. While recognizing and reciting that the insurer had ''agreed to pay the incurred medical expenses'' with all the claims for which the companies were thoroughly familiar, of which they had had full notice and which they had, in fact, been contesting, the Commission made its order denying the supplemental award for medical expense on the sole ground of ''payment to the said Jimmie Johnston, the employee . . . who is the party primarily liable therefor''.

▆ The answer of the respondent Commission seeks to justify the order upon the ground that it would be unfair and unjust to again assess the insuranse companies with the amount of the claims—they having already overpaid the employee. First of all, it may be said that the insurers will not again be assessed because they were never required to pay the amount of these medical bills to the employee. By its agreement the Constitution Indemnity Company undertook to pay the claims to those who had furnished medical services. By the supplemental award, made on March 7, 1933, it was required to do just that. The overpayment of the employee was the result of mistake, negligence, or perhaps, as suggested by these petitioners, a deliberate effort to avoid payment of the claims to the petitioners. In either

event, the petitioners here, who furnished the services and whom the insurance company agreed to compensate, are in no way responsible for what we shall term the mistake of the insurance carrier. Nor do we think the fact of overpayment furnishes a sufficient ground for the Commission to abrogate the plain written undertaking and agreement made for the benefit of these petitioners (in so far as their claims are concerned). ▆ The remedy of the insurance company, assuming that it has a remedy, is to collect from the employee the amount of the overpayment, but it should not be permitted to transfer, by its own mistake, the responsibility of collecting from Johnston to those whom it has agreed to pay. · The primary responsibility was upon the employer to furnish medical assistance to the injured employee, and even though we assume that the circumstances of the employment of the petitioners herein were sufficient to create a liability on the part of the employee, that liability was assumed and acknowledged to be that of the insurer by its own solemn agreement and it cannot now be avoided. The respondent Commission had no authority, after the approval of the compromise agreement, to relieve the insurer of its responsibility to these petitioners thereunder.

The order of February 5, 1934, is annulled.

Langdon, J., Curtis, J., Seawell, J., Shenk, J., and Waste, C. J., concurred.